BUTKIEWICZ v. BREDLOW, ADMX.

5-1992                                    330 S. W. 2d 588

Opinion delivered December 21, 1959.

[Rehearing denied January 25, 1960]

*Owens, McHaney, Lofton & McHaney, G. Thomas Eisele,* for appellant.

*Mehaffy, Smith & Williams, William H. Bowen, William L. Terry,* for appellee.

J. SEABORN HOLT, Associate Justice. This litigation involves the ownership of a small herd of cattle, appellants asserting that the cattle were given to them and belonged to them, and appellee denying their claim.

Appellee, Gwendolyn Armstrong Bredlow, is the administratrix of the estate of Reuben Bredlow who died in November 1956. Bredlow left no children and was survived by his wife, Gwendolyn, and his mother, Gertrude Bredlow. He left an estate valued at more than $300,000.00. Appellant, Edward J. Butkiewicz, is the husband of appellant, Annette Butkiewicz, and she was the niece of the deceased, Reuben Bredlow, and is the daughter of Lyde Campbell.

As we read this record, it appears to us that the primary and decisive issue to be determined is whether the cattle involved were given by Reuben, during his lifetime, to the appellants. Thus a question of fact is presented and we have concluded, on trial *de novo* here, that the preponderance of the evidence presented shows that these cattle were given outright to appellants as they claim; that Reuben Bredlow's estate has no interest in them whatever and that the trial court erred in holding otherwise.

Dan Sparkman, a witness for appellant, testified that he had known Reuben Bredlow since 1933, had worked for him from 1940 until 1955 and stayed on his place until after Bredlow's death; that he was with Reuben a lot — almost daily — and was with him practically every time he went hunting or fishing which he loved. He went with Reuben to Florida in 1955 and 1956. Reuben talked to him on these trips about the anticipated purchase of cattle from Lyde Campbell and said he was buying the cattle and giving them to Ed and Annette in appreciation for their taking care of his mother to whom he was very much devoted; that he told him this before and after he bought the cattle.

Reuben's own mother, Mrs. Gertrude Bredlow, testified, in effect, that on the day Reuben purchased the cattle from Lyde Campbell he told her of the transaction and also that he had turned them over to Ed. "Q. He referred to them as Ed's cattle? A. Yes, he never — well, he never claimed the cattle at all because from the very start he had told me that he had bought the cattle and turned them over to Ed. Q. Your son, Reuben, told you that? A. Yes. Q. Is there any doubt in your mind that your son gave the cattle to Ed Butkiewicz? A. Not the least doubt."

Witness Lyde Campbell testified that he had entered into an agreement to lease to a Mr. Lynn the 160 acre Anglin tract for a five year term and also sell to him (Lynn) the 41 head of cattle in question for $3,185.00 but that Reuben told him he had arranged with Ed and Annette for them to move down to the farm and for his mother to live with them; that cancellation of the lease was accomplished and that Reuben told him (Lyde) that he would take over the purchase of the cattle and that he was buying them for Ed. He further testified that at the time the interest of Gertrude Bredlow and Phyllis Grant in the 160 acre tract was conveyed to appellant, Annette.

A summation of evidence in this case is to the following effect: Reuben's primary concern was the welfare and happiness of his mother. His wife was addict-

ed to drink, his mother was a teetotaler and was not happy in Reuben's home. Reuben wrote appellants, then living in the East, and requested their return to Arkansas. Appellant, Annette, was his favorite niece. Appellants moved back to Arkansas in August of 1949 and at that time Reuben's mother was staying with her daughter, Mrs. Lyde Campbell, at Prairie Grove, Arkansas. Appellants went to Prairie Grove and brought Reuben's mother back with them and they stayed with Reuben and appellee, Gwendolyn (his wife), for about three months when they moved to a 160 acre farm (the Anglin place) which was owned by Reuben. They then moved into a frame house on the 160 acre tract and Reuben's mother stayed with them there until January 1952. From that time until March 1953, Reuben's mother spent the weekends with Reuben and the weekdays with appellants, Ed and Annette. In March 1953 Annette's mother and father (the Campbells) moved down from Prairie Grove onto the 160 acre Anglin place and Reuben's mother immediately moved in with the Campbells and on July 27, 1953, Reuben deeded this tract of land to his mother and his sister (Mrs. Campbell) for their lives and during the life of the survivor, with the remainder to Mrs. Campbell's children, Annette (Appellant) and Phyllis Grant. Reuben's mother remained with the Campbells for the next year and a half, until October 1954 when Mrs. Campbell suffered a severe burn and was moved into town where Annette cared for her until her death in April 1955.

From October 1954 until the death of her daughter in April 1955, Reuben's mother stayed with him part of the time and with Kate Bredlow part of the time. She visited her half brother in Marked Tree for a month and beginning in May 1955, she spent the weekdays with appellants, who had now moved to North Little Rock, and the weekends with Reuben. This arrangement was not satisfactory to Reuben. As indicated, when Mrs. Campbell died, title to the Anglin place was in Annette and her sister, Phyllis Grant, subject to the life estate of Mrs. Gertrude Bredlow. Ed and Annette wanted to live on the 160 acre farm but not in the old frame

house. They wanted to build a new house, however, to do so would force them to borrow money and mortgage the land but the title, as indicated, was not in appellants. To solve this dilemma, Reuben arranged for and had title to the 160 acre Anglin farm transferred to Annette. The 41 head of cattle was purchased from Lyde Campbell and turned over to Ed and left on the place in his possession. The deed to the property from Gertrude Bredlow and Phyllis Grant was executed to Annette October 26, 1955 and thereafter appellants procured a loan of $10,000.00 (January 1956) with which they proceeded to build a spacious and modern new home. During its construction, Reuben's mother spent practically every day with them and, in fact, was the first to move in — ahead of appellants by two days. It appears that she lived happily with them in this home until her death on July 4, 1958.

The evidence further shows that Ed and Annette did all the work required to care for the herd of cattle, provided feed and supplies needed and that Reuben knew this. It is undisputed that Ed started selling the cattle almost from the beginning when he could get a good price and kept the proceeds from the sales. He butchered for his own use some of the cattle with a value of $200.00 without accounting to Reuben or his estate and that eight or more cattle died while in appellant's custody and they sold the remaining cattle December 30, 1957 at a price of $3,293.00 at which time the herd had grown to 61 head. It appears to us that this is strong evidence that Reuben intended to give the cattle outright to appellants.

As indicated, without attempting to set out the testimony of all the witnesses, when the evidence is weighed and reconciled, we think the great preponderance thereof shows that it was the clear intent of Reuben Bredlow to give the cattle in question to appellants and that he did so.

Accordingly, the decree is reversed and since the cause appears to have been fully developed, it is dismissed.